1  LIVE OAK LAW OFFICE LLP
   Robyn Fass Wang (SBN 194006)
2  Pilar R. Stillwater (SBN 260467)
   1442A Walnut Street #229
3  Berkeley, California 94709
   Telephone: 510.637.9349
4  rfasswang@liveoaklawoffice.com
   pstillwater@liveoaklawoffice.com
5  Attorneys for Plaintiffs:
   *William Stephenson, Thomas Bodnar, and*
6  *Joshua Forster*

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10                              FRESNO DIVISION

11

12  **WILLIAM STEPHENSON, THOMAS**          2:22-cv-01521-DAD-JDP
    **BODNAR, AND JOSHUA FORSTER**
13                                          **CONSOLIDATED COMPLAINT**
                                            **FOR VIOLATIONS OF THE FIRST,**
14                           Plaintiffs,    **EIGHTH, AND FOURTEENTH**
                                            **AMENDMENTS TO THE UNITED**
15            v.                            **STATES CONSTITUTION UNDER**
                                            **42 U.S.C. § 1983**
16
    **STEPHANIE CLENDENIN AND BRANDON**
17  **PRICE,**

18                            Defendants.

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.      Plaintiffs William Stephenson, Thomas Bodnar, and Joshua Forster are civilly detained persons currently housed in the California Department of State Hospitals, Coalinga State Hospital ("Coalinga" or "DSH-C").  Plaintiffs Forster and Bodnar are being denied treatment, which is the only thing separating their detention from punishment, and are alleged Sexually Violent Predators ("SVPs") awaiting treatment and/or adjudication of their SVP Petition under California's Sexually Violent Predator Act (Cal. Welf. & Inst. Code §6600, *et seq.*) (hereinafter, the "SVPA").  Plaintiff Stephenson is a civilly committed Sexually Violent Predator who has been found eligible for and is awaiting conditional release.

2.      This lawsuit is brought under 42 U.S.C. § 1983 for violations of Plaintiffs' rights under the Eighth and Fourteenth Amendments of the United States Constitution, which provide that all people are entitled to be free from cruel and unusual punishment and have a right to due process.  Both rights have been egregiously violated by the Defendants.  Plaintiff Bodnar also brings a First Amendment claim against Defendants for violating his freedom of religion.

**PLAINTIFFS**

3.      Plaintiff William Stephenson currently resides at Coalinga State Hospital located at 24511 West Jayne Ave., Coalinga, CA 93210.  Mr. Stephenson alleges that his civil rights were violated by the actions of the Defendants in their individual and official capacities. Mr. Stephenson has been civilly committed under the SVPA from April 2018 to the present.  Unlike the other Plaintiffs, Mr. Stephenson has been committed to DSH-C as an SVP. He has completed the treatment program and has been approved for conditional release.

4.      Plaintiff Joshua Forster currently resides at Coalinga State Hospital located at 24511 West Jayne Ave., Coalinga, CA 93210.  Mr. Forster alleges that his civil rights were violated by the actions of the Defendants in their individual and official capacities. Mr. Forster has been detained pre-commitment under the SVPA from October 2017 to present; he has been engaged in treatment since he was detained.  He has tried to complete the treatment program at Coalinga, only to be met with a lack of adequate staffing, a lack of adequately trained staff, a lack of group therapy courses required to advance in the treatment program, and a lack of retention among staff,

1    which has consistently prevented him from being able to complete the treatment program at

2    Coalinga over the last seven-plus years. The treatment program is designed to be completed in

3    approximately 18 months.

4         5.    Plaintiff Thomas Bodnar currently resides at Coalinga State Hospital located at 24511

5    West Jayne Ave., Coalinga, CA 93210. Mr. Bodnar alleges that his civil rights were violated by

6    the actions of the Defendants in their individual and official capacities. Mr. Bodnar has been a

7    pre-commitment civil detainee from July 2018 to present. He has tried to complete the treatment

8    program at Coalinga, only to be met with a lack of adequate staffing, a lack of adequately trained

9    staff, a lack of group therapy courses required to advance in the treatment program, and a lack of

10   retention among staff, which has consistently prevented him from being able to complete the

11   treatment program at Coalinga over the last seven years. The treatment program is designed to be

12   completed in approximately 18 months.

13

14                                    **DEFENDANTS**

15        6.    Defendant Stephanie Clendenin, is currently the Director of the Department of State

16   Hospitals (DSH), located at 1600 9th Street, Sacramento, California, 98814. She has held that

17   position since 2019. Prior to 2019 she served as Chief Deputy Director of the Department of

18   State Hospitals from 2015 to 2018. Her duties include (l) establishing a list of property and/or

19   items which civilly detained patients are not allowed to possess (WIC, §7295(b)); (2) having the

20   Executive Director of each hospital, here Defendant Brandon Price, establish a list of disallowed

21   property and/or items for their hospital (in this case DSH-C) subject to her review/approval (WIC,

22   §7295(c)); and (3) to maintain conditions of confinement for the plaintiff in such a manner as to

23   insure those conditions do not become punitive in nature. Director Clendenin is sued in her

24   individual and official capacity.

25        7.    Defendant Brandon Price is currently the Chief of Hospital Services at the

26   Department of State Hospitals – Coalinga, located at 224511 West Jayne Ave., Coalinga,

27   California 93210. Prior to his appointment as Chief of Hospital Services in June of 2024, he was

28   the Executive Director of Coalinga from 2016, and had additional roles prior to 2016, beginning

1  in 2010, including Hospital Administrator, Acting Hospital Administrator, Acting Assistant

2  Hospital Administrator, Acting Director of Quality Improvement, Mental Health Program

3  Supervisor and Standards Compliance Coordinator.  Defendant Price's duties include

4  (1) establishing a list of property and/or items civilly detained patients residing within DSH-C are

5  not allowed to possess (WIC,§7295(c)); (2) submission of that list to the Director of DSH

6  (Defendant Clendenin) for final approval; and (3) maintenance of conditions of confinement for

7  the plaintiffs in such a manner that those conditions do not become punitive in nature. Defendant

8  Price is sued in his individual and official capacity.

9  **LEGAL BACKGROUND**

10  **I.    CALIFORNIA'S SEXUALLY VIOLENT PREDATOR ACT: HEALTH & WELFARE CODE SECTION 6600, *ET SEQ.***

11

12  8.    California Welfare and Institutions Code Section 6600, *et seq.*, the Sexually Violent

13  Predator Act (SVPA) authorizes the state to "civilly commit individuals found to be SVPs after

14  they conclude their prison terms." *People v. DeCasas*, 54 Cal. App. 5th 785, 802 (2023) (citations

15  omitted). The dual purposes of the SVPA "are to protect the public from dangerous felony

16  offenders with mental disorders and to provide mental health treatment for their disorders."

17  *People v. Superior Ct. (Vasquez)*, 27 Cal. App. 5th 36, 42 (2023). "The statutory scheme

18  establishes a multiple-level review for inmates who may be SVPs."  *State Dep't of State Hosps. v.*

19  *Superior Court*, 61 Cal. 4th 339, 344 (2015) (footnotes omitted).

20  9.    After screening by CDCR, if two DSH evaluators find a potential committee meets

21  the criteria, DSH refers them to the DA to file a petition. If the first two evaluators split, a second

22  pair is appointed. Welf. & Inst. Code § 6601(e). If the first pair or the second pair agree that the

23  person qualifies, the district attorney may file a petition for commitment, and after a facial review

24  of the petition the Superior Court can order the respondent held pending a probable cause hearing

25  which "shall" commence within ten days. *Id.*; *see also id.* at § 6601.5. The Superior Court then

26  conducts a hearing to determine whether there is probable cause that the accused person is an

27  SVP. *Id.* § 6602.

28

1    10.    If the Superior Court finds there is no probable cause after a hearing per § 6602, or if

2    the trier of fact finds the petition is not proven beyond a reasonable doubt after a trial, the court

3    dismisses the petition and orders its subject to be released. § 6604.

4    11.    "[I]f the court finds probable cause . . . the court orders a trial to determine whether

5    the person is an SVP under section 6600." *Reilly v. Superior Court*, 57 Cal. 4th 641, 647 (2013).

6    Pending trial, the person can be detained at the State Hospital. § 6602.5. "Though civil in nature,

7    this trial contains a number of procedural safeguards commonly associated with criminal trials,

8    including the alleged SVP's right to a jury trial, to assistance of counsel, and to a unanimous jury

9    finding that he or she is an SVP beyond a reasonable doubt before he or she may be committed."

10    *E.g.*, *Reilly*, 57 Cal. 4th at 647 (internal statutory citations omitted). Upon the alleged SVP's

11    request, appointed counsel shall help the person obtain an independent expert to evaluate him or

12    participate in his trial. § 6603(a). However, while "[t]he constitutional requirement of due

13    process . . . applies to SVPA commitment proceedings and requires a trial within a meaningful

14    time," the "SVPA does not specify a time within which a trial must be held after the court makes

15    a probable cause finding." *DeCasas*, 54 Cal. App. 5th 785 (citations and internal quotation marks

16    omitted).

17    12.    A person ultimately found by a jury to be an SVP is "committed for an indeterminate

18    term to the custody of [the State Department of State Hospitals (DSH)] for appropriate treatment

19    and confinement in a secure facility." *Id.* Notably, only once a person is civilly committed by

20    trial are they entitled to annual examinations "to assess whether the person is still likely to engage

21    in sexually violent criminal behavior if discharged." *See State Dep't*, 61 Cal. 4th at 344 (citing

22    § 6605, subd. (a)). Further, after a person is committed—not just detained and awaiting trial—

23    they can petition the court to order an independent evaluation if the annual review finds against

24    them. *See* § 6608. Thus, only after commitment is the person eligible for conditional or

25    unconditional release.

26    **A.    Civil Detainees Under the SVPA Are Entitled to Treatment.**

27    13.    "The Supreme Court 'repeatedly has recognized that civil commitment for any

28    purpose constitutes a significant deprivation of liberty that requires due process protection.'"

*Howe v. Hughes*, 74 F.4th 849, 852 (7th Cir. 2023) (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)).[1]  The Supreme Court has required that in order to detain an individual civilly, individuals must "suffer[] from a mental illness and exhibit[] some form of violent behavior." *See, e.g.*, *id.* (quoting *Addington*, 441 U.S. at 426; additional citations omitted).

14.    "The Fourteenth Amendment requires states to balance their interests—caring for citizens suffering from mental illness and protecting the community— against the liberty interests of those who it seeks to civilly detain." *Id.*  (citing *Addington*, 441 U.S. at 425-26; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "This balance can only be struck where the state's interest in civil commitment is not punitive." *Id.* (citations omitted).  Thus, the purpose of civil commitment is "to provide rehabilitation and treatment, not retribution and deterrence." *Id.*

15.    Most importantly here, "[c]ivil detainees must actually 'receive treatment for the disorders that led to their confinement and be released when they've improved enough no longer to be dangerous." *Id.* at 853 (citing *Hughes v. Dimas*, 837 F.3d 807, 808 (7th Cir. 2016); *Kansas v. Hendricks*, 521 U.S. 346, 368–69 (1997); *Allen v. Illinois*, 478 U.S. 364, 369–74 (1986)); and quoting *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982) ("When a person is institutionalized— and wholly dependent on the State— ... a duty to provide certain services and care does exist."). "It is not enough for a state to purport to offer treatment but in reality provide next to nothing (or nothing at all)." *Id.*  "The essential takeaway is that civil detainees are 'entitled to non-punitive programs designed using the exercise of professional judgment.'" *Id.* (citations omitted).

16.    "A person who is involuntarily civilly committed based on mental incapacity, has a due process right to 'such individual treatment as will give [him] a realistic opportunity to be cured or to improve his . . . mental condition . . . because, absent treatment, [he] could be held indefinitely as a result of [his] mental illness." *Fletcher v. Clendenin*, No. 122CV00249 AWIBAMPC, 2022 WL 2791480, at *4 (E.D. Cal. July 15, 2022) (quoting *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980).)  "Indeed, states must invest resources to ensure that their civil

---

[1] Although *Howe* is a Seventh Circuit case, Illinois' Sexually Dangerous Persons Act is significantly similar to California's SVPA. And the *Howe* Court's decision is consistent with the 9th Circuit's cases determining related issues. *See, e.g.*, *Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004); *see also* ." *Fletcher v. Clendenin*, No. 122CV00249 AWIBAMPC, 2022 WL 2791480 (E.D. Cal. July 15, 2022).

commitment programs—both in design and in practice—provide detainees sufficient treatment to make release a realistic possibility." *Howe v. Hughes*, 74 F.4th at 853. "If a state fails to do so and its program becomes 'such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base [their decisions] on such a judgment,' then the state has violated the Fourteenth Amendment. *Id.* (quoting *Romeo*, 457 U.S. at 323).

17. The provision of treatment during civil commitment is thus the primary reason why California's SVPA does not run afoul of the constitutional requirement of due process. Treatment is thus central to the justification for the SVPA and is written into the statute:

> The facility designated by the community program director may be a state hospital, a local treatment facility, a county jail, or any other appropriate facility, *so long as the facility can continue the person's program of treatment*, provide adequate security, *and minimize interference with the person's program of treatment.*"

Cal. Penal Code § 1610(b) (emphasis added); *see also* WIC § 6604 ("the person shall be committed for an indeterminate term . . . for appropriate treatment and confinement in a secure facility") (emphasis added). Thus treatment distinguishes civil commitment from criminal incarceration.

18. Where, as here, Plaintiffs Bodnar and Forster are still waiting for trials on their petitions, treatment is equally—if not more—important. *See, e.g. Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004) ("[A] civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive."). "Under Bell and our circuit precedent, a restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation to its nonpunitive purpose,' or is 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods." *Id.* (citing *Demery v. Arpaio*, 378 F.3d 1020 (9th Cir. 2004); *Hallstrom v. City of Garden City*, 991 F.2d 1473 (9th Cir. 1993)) (alterations omitted). The Ninth Circuit further explained:

> With respect to an individual confined awaiting adjudication under civil process, a presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment.

1    *Id.*

2    19.    Defendants' policies and practices for providing treatment to civil detainees in

3    Coalinga fall so far below the accepted professional judgment, practice, or standards as to

4    demonstrate that Defendants did not base their decisions on such a judgment.

5    **B.    Civil Detainees are Entitled to Conditions Equal or Better than Prisoners'**
       **Conditions.**

6    20.    Defendants must ensure that any and all conditions of confinement the Plaintiffs are

7    subjected to are not more restrictive than those of prisoners. "Under Bell and our circuit

8    precedent, a restriction is 'punitive' where it is intended to punish, or where it is 'excessive in

9    relation to its nonpunitive purpose,' or is 'employed to achieve objectives that could be

10   accomplished in so many alternative and less harsh methods." *Id.* (citing *Demery v. Arpaio*, 378

11   F.3d 1020 (9th Cir. 2004); *Hallstrom v. City of Garden City*, 991 F.2d 1473 (9th Cir. 1993))

12   (alterations omitted). The Ninth Circuit further explained:

13
> With respect to an individual confined awaiting adjudication under civil process, a
> presumption of punitive conditions arises where the individual is detained under
> conditions identical to, similar to, or more restrictive than those under which pretrial
> criminal detainees are held, or where the individual is detained under conditions more
> restrictive than those he or she would face upon commitment.

14

15

16   *Id.* Thus, where, as here, an "SVPA detainee is confined in conditions identical to, similar to, or

17   more restrictive than, those in which his criminal counterparts are held, we presume that the

18   detainee is being subjected to 'punishment.'" *Id.* at 932. (citing <u>Sharp v. Weston</u>, 233 F.3d 1166,

19   1172–73 (9th Cir. 2000).  "[T]o put it more colorfully, purgatory cannot be worse than hell."

20   *Id.* at p. 933.

21   **C.    California's Welfare and Institutions Code Requires Good Cause and a**
       **Particularized Showing for Restricting Patient Rights.**

22

23   21.    California Health and Welfare Code Section 884(a) provides: "These rights shall only

24   be denied for good cause in accordance with Subsection (b) of this Section."

25   22.    Section 884 Subsection (b) provides, in relevant part:

26   Non-LPS patients[2] have the following rights, subject to denial for good cause:

27   _____

28   [2] LPS refers to the Lanterman-Petris-Short Act, which enacted certain requirements for
     detaining mentally disordered individuals not falling within the SVPA.

(1) ***A right to keep and use personal possessions as space permits, except items and materials that are listed as contraband by the facility***. Each facility shall make a copy of the contraband listing available on all treatment units and public areas within the facility. Each patient shall receive a copy of the contraband listing upon admission.

(2) ***A right to have access to individual secured storage space*** for personal possessions in accordance with the formal policies and procedures of the facility. Title 19, Section 314 and Title 22, Sections 71543 and 73507 require hospitals and licensees to comply with State Fire Marshall regulations.

(3) ***A right to keep and spend a sum of the patient's own money via the facility monetary replacement system.***

(4) ***A right to personal visits*** during regularly scheduled visiting days and hours. The right to have visits shall not be denied except as is necessary for reasonable security of the facility and the safety of persons. The length and frequency of visits and the number of persons permitted to visit a patient at the same time may be limited consistent with safety, security, and to ensure that all patients have a fair opportunity to have visitors.

(5) ***A right to access telephones to make and receive confidential telephone calls***, or to have such calls made for them. Telephone hours, frequency and duration of telephone calls, and method of payment may be limited to ensure access by all patients.

(6) ***A right to have access to letter writing materials and to mail and receive correspondence***. Designated facility employees shall open and inspect all incoming and outgoing mail addressed to and from patients for contraband. Confidential mail, as defined in Section 881(c), shall not be read. Limitations on size, weight and volume of mail shall be specified by formal facility policy.

(7) ***A right to receive packages.*** Designated facility employees shall open and inspect all incoming and outgoing packages addressed to and from patients for contraband. Limitations on the size, weight and volume, and frequency/number of packages allowed shall be specified by formal facility policy.

(8) ***A right to have access to legal reference material.*** Limitations on the time, duration, frequency, and method of access shall be specified by formal facility policy to ensure opportunity for access by all patients.

(9) ***A right to participate in appropriate programs of publicly supported education*** that are consistent with the patient's treatment plan and with the secure treatment facility environment.

(10) ***A right to social interaction***. The formation of supervised patient leisure time activity groups that promote educational, social, cultural and recreational interests of participating patients shall be permitted, except for activities that pose a threat to safety and security.

Cal. Code Regs. tit. 9, § 884(b) (bold italics added).  Section 884 further states:

(c) ***The rights specified in Subsection (b) of this Section shall be denied only for good cause. Good cause for denying a patient the exercise of a right exists when the facility director determines that***:

(1) The exercise of the specific right would be injurious to the patient; or

(2) There is evidence that the specific right, if exercised, would seriously infringe on the rights of others; or

(3) The facility would suffer serious damage if the specific right is not denied, or;

(4) The exercise of the right would compromise the safety and security of the facility and/or the safety of others; *and*

(5) That there is no less restrictive way of protecting the interests specified in Subsections (c)(1) through (4) of this Section.

Cal. Code Regs. tit. 9, § 884(c) (bold italics added).  Section 884 further continues to state:

(d) *The reason for denial of a right under this Section must be related to the specific right denied. A right specified in this Section shall not be withheld or denied as a punitive measure, nor shall a right specified in this Section be considered a privilege to be earned. A denial of a right shall not exceed thirty days without additional staff review.* Treatment plans shall not include denial of any right specified in Subsection (b) of this Section.

(e) *Each denial of a right specified in this Section shall be noted in the patient's treatment record*. Documentation shall take place immediately whenever a right is denied. The notation shall include:

(1) Date and time the right was denied.

(2) Specific right denied.

(3) Good cause for denial of right.

(4) Date of review if denial was extended beyond 30 days.

(5) The facility director's signature authorizing the denial.

(f) The patient shall be told of the content of the notation and the process for restoration at the time of the denial.

(g) *Each denial of a right specified in this Section shall be documented regardless of the reason for the denial, or the frequency with which a specific right is denied* in a particular facility, or to a particular patient.

(h) *A patient's right under this Section shall be restored when the good cause for its denial no longer exists*. When a right has been denied, staff shall employ the least restrictive means of managing the behavior that led to the denial. The date that a specific right is restored shall be documented in the patient's treatment record.

(i) Information in the patients' treatment record pertaining to a denial of rights shall be available on request to the patient, their attorney/conservator/guardian, the Department, or excluding the patient identity, a member of the State Legislature.

Cal. Code Regs. tit. 9, § 884(d) (bold italics added).

23.     For a condition to not become punitive in nature requires that Defendants ensure any denial of an item is in accordance with CCR, Title 9, §§880-884 and that the objective of any denial not be based on an element of punishment (i.e., retribution or deterrence of an already criminal act). *See, e.g.*, *Blanas*, 393 F.3d at 933 (9th Cir. 2004). Additionally, any denial cannot be based on wholly speculative concerns of 'safety and security' and any such concerns must use the terms 'safety' and 'security' as they are defined in CCR Title 9, §880, *et seq*.

## II.    DEFENDANTS' VIOLATION OF PLAINTIFFS' RIGHTS UNDER THE EIGHT AND FOURTEENTH AMENDMENTS

### A.    Defendants Have Denied and Continue to Deny Plaintiffs Bodnar and Forster the Treatment Required by the United States Constitution.

24.     The treatment program provided to Plaintiffs Bodnar and Forster while detained in Coalinga is far below the constitutional minimum required to ensure that their detention does not amount to punishment or double jeopardy.

25.     CSH's SOTP program uses the workbook "Building a Better Life" by Pamela M. Yates, Ph.D., and David S. Prescott, LICSW.  The program is designed to take eighteen months. At Coalinga, it often takes patients five years or more.  This inadequate treatment program is the result of Defendants' policies, practices, and procedures.

26.     For example, the available treatment at Coalinga is below the recommendations found in the "Sex Offender Civil Commitment Program Network" (SOCCPN).  SOCCPN gathers information from sex offender civil commitment programs in 19 different states, including such metrics as staff qualifications and rations, phase description, hours of treatment, and others. SOCCPN uses these metrics to determine generally accepted practices and to calculate an acceptable range of variation among treatment programs. Defendants' policies have caused Coalinga's treatment program to fall short in the categories of facilitator ratio, hours of treatment per week, and other categories.

27.     Defendants cannot claim a lack of notice of the conditions that make violations of the United States Constitution highly likely.  For example, the California Sex Offender Management Board (CASOMB) September 2020 report titled "Sexually Violent Predator Project: Introduction & Duration of SVP Detainee Status," makes clear that Coalinga's civil detention treatment

program is inadequate.[3]  In 2020, "nearly one out of four Detainees currently at DSH-Coalinga has been waiting for their commitment proceeding for greater than ten years."  CASOMB 2020 SVP Detainee Status at p.3.  The report goes on to state that this is significant because "[t]he number of detainees and the lengthy duration of detainee status in CA is highly aberrant from other civil commitment programs nationally. . . . The duration of detainee status impacts the program's ability to comport with best practice standards . . . ." *Id.*  This is just one example of how Defendants were, or should have been, on notice that Coalinga's treatment program is deficient.

28.    Additionally, "Contrary to public belief and the purpose of the SVP law, the majority of those committed as Sexually Violent Predators in California do not participate in the Sexual Offense Specific Treatment Program afforded to them as part of their commitment." *Id.* CASOMB addresses these concerns in additional papers.  *Id.*

29.    With respect to Coalinga's release pathways for committed SVPs and detainees, CASOMB also finds a discrepancy making the resources available to committed SVPs to be greater than that for uncommitted SVPs, despite the fact that the latter may have been detained for more than 10 years, as with their committed counterparts:

> Of the nearly 1000 fully committed SVPs ever (1996-2018), 265 have been released from the state hospital. Only 47 have transitioned from the secure state hospital to the community through the Conditional Release Program (CONREP). The others were unconditionally released, although since 2006 most fully committed SVPs are released with parole supervision. Additionally, 202 detainees have been unconditionally released. The discharge path for the detainees does not permit CONREP, and parole supervision is rare*, thus they are a group receiving less treatment and supervision services than the committed group*.

*Id.* (emphasis added). CASOMB acknowledges that

> the duration of detainee status for individuals with sexual offenses subjected to civil commitment proceedings is excessive and problematic. It wastes state resources and undermines the efficacy of SVP as an intervention to enhance community safety. The duration from the Probable Cause judicial determination to the commitment trial should not be longer than two years. CASOMB will make known this stance to all SVP stakeholders and provide education to the judicial council and legislators.

---

[3] *See* CASOMB, Sexually Violent Predator Project: Introduction & Duration of SVP Detainee Status, https://casomb.org/docs/CASOMB_SVP_Intro_and_Detainee_Status_FINAL_2021-05.pdf (last visited January 27, 2025) (hereinafter referred to as "CASOMB 2020 SVP Detainee Status").

1  *Id.* at 16.

2      30.    The yearly cost for providing evaluations to this population is approximately $18

3  million.  *Id.* at 11.  If committed SVPs or detainees were successfully treated and released, this

4  cost would presumably decline.

5      31.    Defendants' enacted policies make successful completion of treatment a rarity, due

6  to, inter alia, inadequate offerings of groups necessary to move to the next phase of treatment, and

7  a constant rotation of new facilitators to the groups, making patients start over with each new

8  facilitator.  In order to move forward in treatment, patients are told they must make certain

9  progress in groups.[4]  But the infrequency of the offered groups makes advancement nearly

10  impossible, particularly when the facilitators of the groups are also constantly changing.

11      32.    Additionally, Defendants' policies have caused Plaintiffs Bodnar and Forster to

12  receive inadequate treatment plans, and to fail to have timely conferences with all members of

13  Plaintiffs' treatment team present. Plaintiff Bodnar's unit has not had a psychologist for

14  approximately three years, resulting in certain factors of Plaintiff Bodnar's treatment plan being

15  unaddressed by a psychologist for approximately that same amount of time. And Plaintiff Bodnar

16  had not had a full team meeting with all members of his treatment team present for approximately

17  three years prior to the filing of his original complaint.  Also, Plaintiff Bodnar's psychologist

18  overseeing his SOTP Module II group has changed five times, making advancement challenging.

19  Mr. Bodnar has been told that because the new psychologist is not personally familiar with Mr.

20  Bodnar's treatment progress, he must re-do some of his prior work.

21      33.    Plaintiff Bodnar has also faced the problem of being required to present certain

22  assignments in group to move forward in treatment.  However, many groups are either cancelled,

23  rescheduled, start late, or do not provide the proper structure for Plaintiff Bodnar to complete his

24  presentations that are supposedly required for his treatment to progress. Specifically, Plaintiff

25  Bodnar's SOTP Module II group only allowed him to present approximately every month-and-a-

26  half.  On information and belief, CDCR prisoners in sex offender treatment are given greater

27  _____

28  [4] There is no individualized treatment, no required treatment modality, and no
accreditation of Coalinga's program.

access to groups, greater access to personal treatment, and are able to present on a more frequent basis than those in Coalinga.

34.    Defendants have also closed ancillary groups that were recommended to treat at least Plaintiff Bodnar and Forster's Dynamic Risk Factors.

35.    At least Plaintiff Bodnar's treatment plan is also out of date and inaccurate. This is problematic because the treatment plans are relied on by the state evaluators in determining whether an individual presently meets the criteria of an SVP. An inaccurate or out-of-date treatment plan therefore can cause civil detainees or committees to endure unnecessary and prolonged detention.  When asked, evaluators have told Plaintiff Bodnar they have no personal knowledge of the frequency, duration, or contents of the groups being offered. Thus the failure to update treatment plans is a significant deprivation of Plaintiffs' right to treatment.

36.    Additionally, Defendants' enacted policies have caused Plaintiffs Bodnar and Forster to endure additional detention when Plaintiffs were required to meet the standards of a new treatment program when the previous program was discontinued, due to no conduct of Plaintiffs. Because Coalinga does not follow an accredited program, or even a guideline, Defendants are free to change the program at their whim.

37.    Since Plaintiffs Bodnar and Forster were detained, there has been a diminishing number of facilitators, groups, and hours of treatment available at Coalinga. Defendants allow group facilitators to end a group early or cancel a group for the day so that the facilitators can attend to their administrative duties, making treatment a lower priority.  Additionally, Defendants allow facilitators to rotate between groups, which causes disruption to treatment continuity.

38.    In *Howe*, the district court considered expert testimony on acceptable standards of treatment and found that the civilly committed SVP plaintiffs in that case were entitled to injunctive relief because they were receiving group therapy sessions that were less than the generally accepted 90-minute duration, for a total of at least five hours per week, noting that the "national mean average for general group therapy in civil commitment programs is 7.5 hours per

1    week." 558 F. Supp. 3d at 675.[5] The Coalinga program offers significantly less "group" time

2    than the national average.

3        39.    The *Howe* court also noted that with respect to critical modalities, such as "Substance

4    Abuse, Anger Management, and Victim Empathy," it was "atypical to place [such] critical

5    modalities on hold." *Id.*  Additionally, the court noted that the "lack of clear guidelines for

6    treatment completion or projected timeframes for phase progression impedes the motivation of

7    individuals." *Id.*  The Coalinga program suffers from these same inadequacies regarding specific

8    group topics that have been put on hold and not reinstated in full, as noted by the Howe court

9    with respect to Illinois' civil commitment program.  These "inherent flaws in the [treatment

10   program] result in treatment that is slow, repetitive, and not catered to the mission of treating the

11   men and returning them to the community as quickly as possible." *Howe*, 558 F. Supp. 3d at 674.

12       40.    Here, the minimal treatment offered by DSH falls far below the acceptable standards

13   described in *Howe* even before the pandemic. After a gap with no treatment at all, the current

14   "treatment" consists of ninety minutes per week with inconsistent, unlicensed staff. Group

15   members do not present, and rather merely work in workbooks. The program offered is

16   insufficient for civil detainees and committees to meaningfully make progress towards recovery

17   and to meaningfully challenge their commitments at trial or through other procedural mechanisms

18   for release, such as petitions for conditional or unconditional release. This constitutes a serious

19   violation of due process under the California and U.S. Constitutions and violates the mandates of

20   treatment for civil detainees.

21

22

23

24       [5] Although the 7th Circuit reversed the *Howe* district court's specific injunction, which
         required a minimum number of hours of treatment that was set above the minimum required by

25       the Constitution, the 7th Circuit agreed with the district court that "the Constitution permits
         Illinois to operate a civil confinement program for sexually dangerous persons . . . only as long as

26       there is a careful balancing of the state's interest in the safety of its citizens against those
         individuals' liberty interest. By providing inadequate treatment and, as a result, depriving

27       detainees of a realistic possibility of release, Illinois has failed to uphold its end of the balance.
         The state should right these constitutional wrongs without delay."  *See Howe v. Hughes*, 74 F.4th

28       849, 859 (7th Cir. 2023).

**B.    Defendants Have Denied and Continue to Deny Plaintiffs Access to the Same Electronic Devices Provided to Criminal Prisoners**

41.    Prisoners within the California Department of Corrections and Rehabilitation (CDCR) are now given, by CDCR, internet capable devices and internet access.[6] On information and belief, CDCR's program allows criminal detainees ("criminal prisoners") a better quality of life and a greater chance of successful re-entry into society with a higher probability of rehabilitation. On information and belief, these internet capable devices are provided to prisoners that have been convicted of sex offenses, on an individually restricted basis. Defendants have not adopted this program for civilly detained or committed patients, even though civilly and detained committed patients are entitled to equal or better treatment than criminal detainees. *See, e.g.*, Cal. Code Reg. Title 9, §§880-884; *Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004); *King v. County of Los Angeles*, 885 F.3d 548 (9th Cir. 2018).

42.    Patients previously detained under the SVPA like Plaintiffs but who are now in the community on conditional release (WIC, §6608), have individualized conditions which allow the patient internet capable devices (e.g., computers, smart phones, gaming devices, etc.). Defendants have denied Plaintiffs the same individualized conditions.

43.    Similarly, criminal parolees, under the constructive custody of CDCR, have individualized parole conditions that allow them to access electronic/internet capable devices (e.g., computers, external hard drives, USB thumb drives, smart phones, etc.) and internet access. Defendants have denied Plaintiffs the same individualized conditions.

44.    These electronic devices provide prisoners with access to email, access to free phone calls, and access to videos, music, and eBooks.  These are not available to Plaintiffs.

---

[6] *See, e.g.*, California Dep't of Corrections and Rehab., Tablets and Telephone Calls, https://www.cdcr.ca.gov/family-resources/tablets/ ("Beginning January 1, 2023, all telephone audio calls made from an incarcerated person in a California state prison will be free of charge to the incarcerated person and their friends and families.").

**C.    Defendants Have Denied and Continue to Deny Plaintiffs Access to the Same Educational Materials Provided to Criminal Prisoners.**

45.    CDCR offers its prisoners industry-standardized Vocational and Academic Education classes which provide them with marketable skills upon their release.[7] These courses include topics such as Building and Construction, Business and Finance, Information and Communication Technologies, Manufacturing, and Transportation.[8]

46.    Defendants do not offer similar training and education to the plaintiffs, and that which is offered is very limited by comparison.

**D.    Defendants Have Denied and Continue to Deny Plaintiffs Access to the Same Provisions and Access to Phone Calls Provided to Criminal Prisoners.**

47.    Prisoners within CDCR and LPS civil committees are allowed to purchase and wear personal clothing. Defendants have denied plaintiffs the right to own and wear the same selection of personal clothing available to prisoners, although plaintiffs are entitled to more rights than prisoners.

48.    Similarly, prisoners within CDCR are allowed to purchase and possess nutritional supplements through approved vendors. DSH-C used to allow patients to purchase and possess nutritional supplements. The approval process for this was individually based and required clearance by the plaintiffs' treatment team and the hospital pharmacist. DSH-C now disallows all nutritional supplements through a blanket denial, without individualized consideration, being so ludicrously enforced so as not to allow Ovaltine due to its vitamin content.

49.    Since at least April 2018 the items on the list of disallowed property and/or items has increased. On information and belief, these additional restrictions are based on Defendants' speculative assertions of a need to deter acts that are already criminal in nature and/or "safety and security" issues. Defendants continually use the term 'safety and security" outside the authorized definition of the terms per CCR Title 9, §881 (w) (defining "Safety" to mean the "protection of persons and property from potential danger, risk, injury, harm or damage) and (x) (defining

---

[7] *See, e.g.*, California Dept. of Corrections and Rehab., Career and Technical Education Programs, https://www.cdcr.ca.gov/rehabilitation/cte/ (last visited January 27, 2025).

[8] *Id.*

"Security" to mean "the measures necessary to achieve the management and accountability of patients of the facility, staff, and visitors, as well as property of the facility") . The good cause for this reduction of allowable property/items has not been individualized for any of the Plaintiffs.

50.    Additionally, the patient package program at DSH-C (the program regulating the receipt of packages) has become so restrictive that it is now akin to the package program implemented by CDCR for its prisoner population.

51.    Effective January 1, 2023, prisoners within CDCR are also allowed free outgoing telephone calls, via the Tablet Program and/or via the CDCR facility's telephone system.

52.    Plaintiffs are denied access to free outgoing telephone calls.  At Coalinga, patients must make calls collect or purchase their own calling cards.  It is also unclear whether their calls are confidential, and some attorneys speaking with their clients avoid discussing privileged information over these potentially unsecured lines.

53.    Additionally, even though currently "DSH issued calling cards" are supposed to be issued to patients, no such cards have been issued, leaving telephone calls to be charged to and the responsibility of the patient or their family.  While the cost of these calls may seem trivial to a person outside the state hospital system, these costs are prohibitive for detainees.

54.    The free phone calls provided to prisoners through their approved electronic devices are not provided to civil detainees and committees, despite the fact that they are entitled to equal or better treatment than their criminal counterparts.

**E.    Defendants Have Denied Plaintiff Bodnar Access to Religious Services.**

55.    Plaintiff Bodnar is a Christian and attends Protestant Services.  Between 2018, when he was detained, and March 2020, Plaintiff Bodnar attended Protestant services offered at Coalinga every Sunday. In March 2020, Coalinga suspended Protestant services, presumably in connection with the Covid pandemic.  Coalinga did not resume Protestant services until mid-2023, even though Coalinga offered Catholic and Native American religious services to patients in their units during the pandemic. Plaintiff Bodnar asserts that his First Amendment right to practice his religion has been violated by Defendants, through policies allowing the practice of certain, but not other, religions.

### III.   PLAINTIFFS HAVE SUFFERED SIGNIFICANT HARM AS A RESULT OF DEFENDANTS' VIOLATIONS

56.    As a result of the policies and procedures implemented by Defendants, Plaintiffs have suffered significant psychological and physical distress, including emotional distress, in at least the following ways:

    a.   For Plaintiffs Bodnar and Forster, the stress and anxiety of a commitment for indeterminate term without a proscribed method of achieving release;

    b.   The loss of companionship of families and friends;

    c.   The loss of earnings as a result of being unable to complete vocational training and, for Plaintiffs Bodnar and Forster, as a result of being unable to complete treatment so as to reenter society and earn income in a civil setting; and

    d.   Other physical and emotional duress to be proven at trial.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (CONSTITUTIONAL VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENT RIGHTS FOR FAILURE TO ADEQUATELY PROVIDE MENTAL HEALTH TREATMENT PURSUANT TO 42 U.S.C. §1983)

57.    Plaintiffs hereby incorporate and realleges each and every allegation set forth above as though fully set forth herein.

58.    This action is brought pursuant to 42 U.S.C. § 1983 for violation of Plaintiffs' due process rights under the Eighth and Fourteenth Amendments.

59.    Defendants are sued herein as administrators of the California Department of State Hospitals.

60.    Defendants, pursuant to officially enacted policies and practices, failed to provide adequate treatment to Plaintiffs Bodnar and Forster, as required by the Eighth and Fourteenth Amendments of the United States Constitution and California State law.

61.    Defendants, were and are specifically aware that their subordinates failed and continue to fail to enact or adopt policies and practices that sufficiently provide for treatment of

1    civil detainees at Coalinga State Hospital and that result in significantly prolonged detention of

2    civilly detained or committed individuals.

3         62.    Defendants, through their own conduct or that of subordinate final policymakers,

4    were specifically aware that civil detainees and civil committees are not provided adequate

5    treatment modalities to ensure detainees and civil committees are not being punished.

6         63.    Defendants, through their final policymakers, knowingly refused to terminate the

7    acts, customs, practices, and misconduct of their subordinates, which they knew were causing and

8    would cause constitutional injury upon the SVP detainees in their charge.

9         64.    The above-described failures constituted conduct violating Plaintiffs Bodnar and

10   Forster's due process rights or conduct that was deliberately indifference to the due process rights

11   of Plaintiffs Bodnar and Forster.

12        65.    The above-described failures on the part of Defendants, through their own conduct

13   and that of their subordinate final policymakers, constituted an acquiescence in the constitutional

14   deprivations that resulted or constituted a reckless and callous indifference to the rights of

15   detainees and civil committees, including Plaintiffs Bodnar and Forster.

16        66.    As a result of the above deliberate acts and omissions of Defendants through their

17   own conduct or that of subordinate final policymakers, Plaintiffs Bodnar and Forster were

18   damaged and injured as alleged above.

19                          **SECOND CLAIM FOR RELIEF**

20   **(CONSTITUTIONAL VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENT
     RIGHTS TO LEGALLY MANDATED CONDITIONS OF CONFINEMENT PURSUANT**
21                          **TO 42 U.S.C. §1983)**

22        67.    Plaintiffs hereby incorporate and realleges each and every allegation set forth above

23   as though fully set forth herein.

24        68.    This action is brought pursuant to 42 U.S.C. § 1983 for violation of Plaintiffs' due

25   process rights under the Eighth and Fourteenth Amendments.

26        69.    Defendants are sued herein as administrators of the California Department of State

27   Hospitals.

28

70. Defendants, pursuant to officially enacted policies and practices, failed to provide Plaintiffs with equal or better treatment as that of criminally detained individuals, as required by the Eighth and Fourteenth Amendments of the United States Constitution and California State law.

71. Defendants, were and are specifically aware that their subordinates failed and continue to fail to enact or adopt policies and practices that sufficiently provide for the provision of services and available amenities to civilly detained and committed persons at Coalinga State Hospital and that result in a significantly decreased quality of life for civilly detained or committed individuals over that of criminally detained individuals.

72. Defendants, through their own conduct or that of subordinate final policymakers, were specifically aware that civil detainees and civil committees are not provided equal or better conditions as that of criminally detained individuals, as required by the Eighth and Fourteenth Amendments of the United States Constitution and California State law.

73. Defendants, through their final policymakers, knowingly refused to terminate the acts, customs, practices, and misconduct of their subordinates, which they knew were causing and would cause constitutional injury upon the SVP detainees in their charge as a result of unconstitutional restrictions to access goods and services available to criminally detained individuals.

74. The above-described failures constituted conduct violating Plaintiffs' due process rights or conduct that was deliberately indifference to the due process rights of Plaintiffs.

75. The above-described failures on the part of Defendants, through their own conduct and that of their subordinate final policymakers, constituted an acquiescence in the constitutional deprivations that resulted or constituted a reckless and callous indifference to the rights of Plaintiffs.

76. As a result of the above deliberate acts and omissions of Defendants through their own conduct or that of subordinate final policymakers, Plaintiffs were damaged and injured as alleged above.

**THIRD CLAIM FOR RELIEF**

**(CONSTITUTIONAL VIOLATION OF FIRST AMENDMENT RIGHT FOR FAILURE TO ADEQUATELY PROVIDE RELIGIOUS FREEDOM PURSUANT TO 42 U.S.C. § 1983)**

77.    Plaintiffs hereby incorporate and realleges each and every allegation set forth above as though fully set forth herein.

78.    This action is also brought pursuant to 42 U.S.C. § 1983 for violation of Plaintiffs Bodnar's religious freedom under the First Amendment.

79.    Defendants are sued herein as administrators of the California Department of State Hospitals.

80.    Defendants, pursuant to officially enacted policies and practices, failed to provide Plaintiff Bodnar with equal or better access to religious services as that of criminally detained individuals, as required by the First Amendment of the United States Constitution.  This has resulted in significantly decreased quality of life for Plaintiff Bodnar over that of criminally detained individuals.

81.    As a result of the above deliberate acts and omissions of Defendants through their own conduct or that of subordinate final policymakers, Plaintiff Bodnar was damaged and injured as alleged above.

**PRAYER FOR RELIEF**

82.    As a result of the above acts and omissions of the Defendants, Plaintiffs seek the following relief with respect to each of the claims above:

      a.    An injunction preliminarily and permanently enjoining Defendants from (1) failing to provide adequate staff, scheduling, and other resources sufficient to provide meaningful treatment to Plaintiffs Bodnar and Forster as required by the Eight and Fourteenth Amendment; (2)  implementing electronic device and internet policies for the Plaintiffs equal to or better than that of civil detainee and committee's criminal counterparts on an individualized basis as required by the Eight and Fourteenth Amendments and state law; and (4) from enacting further policies and

1         procedures that promulgate the constitutional violations described above with

2         respect to the named Plaintiffs.

3     b.   Compensatory general and special damages for each Defendant in an amount in

4         accordance with proof;

5     c.   Reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988;

6     d.   Such other and further relief as the Court deems just or proper.

7

8               Respectfully submitted,

             LIVE OAK LAW OFFICE LLP

9

10

  Dated:  January 29, 2025

11

12             */s/ Pilar R. Stillwater*

           Pilar R. Stillwater

13            Robyn Fass Wang

           Attorneys for Plaintiffs:

14            *William Stephenson, Thomas Bodnar, and Joshua*

           *Forster*

15

16

17

18

19

20

21

22

23

24

25

26

27

28