UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM STEPHENSON, *et al.*, | Case No. 2:22-cv-1521-DAD-JDP (P) |
| Plaintiffs, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| STEPHANIE CLENDENIN, *et al.*, | |
| Defendants. | |

Plaintiffs William Stephenson, Thomas Bodnar, and Joshua Forster bring this consolidated action against defendants Stephanie Clendenin, the Director of the Department of State Hospitals, and Brandon Brice, the Chief of Hospital Services at the Department of State Hospitals—Coalinga, alleging that defendants have violated their Eighth and Fourteenth Amendment rights as civil detainees. ECF No. 64. Defendants have moved to dismiss, ECF No. 66; plaintiffs have filed an opposition, ECF No. 72; and defendants have filed a reply, ECF No. 73. I recommend that defendant's motion to dismiss be granted in part and denied in part.

**Motion to Dismiss**

**I.     Legal Standards**

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a

1

plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co.*, 710 F.3d at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

## II.   Allegations

Plaintiffs are civil detainees who are currently being held in the California Department of State Hospitals, Coalinga State Hospital ("Coalinga"). ECF No. 64 at 2. Forster and Bodnar are alleged Sexually Violent Predators ("SVPs") who are awaiting either treatment or adjudication of their SVP petitions under California's Sexually Violent Predator Act ("SVPA"). *Id.* Stephenson has already been deemed an SVP who has been found eligible for and is awaiting conditional release. *Id.*

Plaintiffs Bodnar and Forster first allege that their detainment at Coalinga violates the Eighth and Fourteenth Amendments because Coalinga's sex offender treatment program falls below the minimum required to ensure their detention does not transform into punishment. *Id.* at 11-15, 19-20. They state that the program used at Coalinga is meant to take eighteen months to complete, but Coalinga's inadequate implementation of the program extends the program's length

1    to five or more years. *Id.* at 11.  They allege that defendants have enacted policies that make
2    successful completion of the treatment program rare due to their inadequate offerings of groups
3    necessary to move to the next phase and the constant rotation of new facilitators to the groups
4    which requires group members restart the program phrase. *Id.* at 12-13.  They also allege that
5    defendants' policies have caused them to receive inadequate treatment plans, noting that Bodnar
6    has not had a psychologist or a full team meeting for three years, the psychologist overseeing his
7    treatment had changed five times, and required group work has been difficult to complete because
8    groups are cancelled, rescheduled, or are disorganized. *Id.* at 13.  They allege that inmates within
9    the California Department of Corrections and Rehabilitation ("CDCR") system are given greater
10   access to groups, personal treatment, and can be present for group work on a more frequent basis
11   than those in Coalinga. *Id.* at 13-14.

12          Next, all plaintiffs allege that their Eighth and Fourteenth Amendment rights are being
13   violated because they are being denied access to electronic devices with access to the internet that
14   are provided to CDCR inmates. *Id.* at 16, 20-21.  They contend that CDCR's practice of giving
15   inmates electronic devices with access to the internet gives those inmates a better quality of life
16   when compared to plaintiffs. *Id.* at 16. They allege the same regarding access to industry-
17   standard vocational and Academic education classes, the ability to purchase and wear personal
18   clothing, nutritional supplements, and free outgoing telephone calls. *Id.* at 17-21.

19          Finally, plaintiff Bodnar alleges that defendants have denied him access to religious
20   services in violation of the First Amendment. *Id.* at 18, 22.  He contends that he is a Christian
21   who attends Protestant Services, and that between sometime in 2018 and March 2020 he regularly
22   attended Protestant services at Coalinga. *Id.* at 18.  However, in March 2020, Coalinga
23   suspended Protestant services, and they did not offer those services again until mid-2023,
24   although they did offer Catholic and Native American religious services during that timeframe.
25   *Id.*

26          Plaintiffs bring their action against defendants in their official and individual capacities.
27   *Id.* at 2-3.  They request an injunction, compensatory and special damages, and attorneys' fees.
28   *Id.* at 22-23.

### III. The Parties' Arguments

Defendants move to dismiss plaintiff's complaint. ECF No. 66. First, they argue that plaintiffs' claims brought under the Eighth Amendment should be dismissed because plaintiffs, as civil detainees, can only challenge the conditions of their confinement under the Fourteenth Amendment. ECF No. 66-1 at 10.

Next, defendants contend that Forster and Bodnar's Fourteenth Amendment claim concerning sex offender treatment should be dismissed because they do not have a right to such treatment under California law. *Id.* at 10-12. According to defendants, California law only entitles individuals to sex offender treatment after they have been deemed SVPs after a trial. *Id.* As such, because Forster and Bodnar have not been adjudicated as SVPs, they are not entitled to treatment. *Id.* at 12.

Defendants next argue that plaintiffs' Fourteenth Amendment claim concerning access to certain provisions should be dismissed. *Id.* at 12-15. To plaintiffs' claim regarding electronic devices, defendants contend that plaintiffs do not have a constitutionally protected interest in internet-capable electronic devices, and even if plaintiffs did have a protected interest, that the interest is being reasonably deprived under current regulations which limit sex offender access to the internet. *Id.* at 12-14. Defendants also argue that plaintiffs have no constitutional right to vocational and academic education, to contraband, or to free phone calls. *Id.* at 14-15. Thus, defendants argue that plaintiffs' Fourteenth Amendment claim premised on access to these items should be dismissed. *Id.* at 12-15.

To Bodnar's First Amendment claim, defendants contend that Bodnar fails to state a viable claim because he did not adequately describe the amount of access to religious services that CDCR inmates had during the pandemic and how it was more than what he had as an SVP. *Id.* at 15. They also argue they are entitled to qualified immunity on plaintiff's claims for damages. *Id.* at 16. Finally, they argue that plaintiffs' claims for damages against defendants in their official capacities are barred by the Eleventh Amendment. *Id.* at 17. In all, they ask that this action be dismissed with prejudice. *Id.* at 17-18.

4

Plaintiffs oppose defendants' motion to dismiss. ECF No. 72. They contend that they have properly alleged Eighth Amendment claims. *Id.* at 18. They also contend that they have sufficiently alleged a Fourteenth Amendment claim regarding their right to treatment as pretrial detainees. *Id.* at 18-21. They contend that under the Fourteenth Amendment, pretrial civil detainees held under the SVPA cannot be subjected to conditions of confinement that are substantially worse than they would face upon commitment. *Id.* at 19. As such, because they are not being given treatment, but those who are committed are obtaining treatment, they are facing substantially worse conditions of confinement than their committed counterparts. *Id.* at 19-20. They also contend that it is irrelevant whether they are entitled to sex offender treatment under California law, because they have a constitutional right to it. *Id.* at 20-21.

Next, plaintiffs contend that they have sufficiently pled their claims for more considerate treatment. *Id.* at 21. First, they argue that defendants applied the wrong legal standard and note that while they may not have individual constitutional rights to personal items and amenities, they have the individual constitutional right to be free from punishment and to more considerate treatment than those who have been civilly committed or criminally prosecuted. *Id.* at 21-23. They contend that, under the proper legal standard, they have alleged that they are being denied more considerate treatment. *Id.* at 23-24.

To Bodnar's First Amendment claim, plaintiffs concede that they erroneously omitted allegations that Bodnar was denied access to religious services that his criminally detained counterparts received. *Id.* at 26. They request leave to amend this claim to correct this error. *Id.* Finally, Plaintiffs argue that defendants are not entitled to qualified immunity and that their claims are not barred by the Eleventh Amendment. *Id.* at 26-28.

**IV. Analysis**

    **A. Eighth Amendment Claims**

The Fourteenth Amendment, not the Eighth Amendment, governs civil detainees' challenges against the conditions of their confinement. *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004). As such, each of plaintiffs' claims purportedly brought under the Eighth Amendment should be dismissed, as their claims are not cognizable under that amendment.

1              **B.     Fourteenth Amendment**

2       Under the Fourteenth Amendment's Due Process Clause, "an individual detained under

3 civil process . . . cannot be subjected to conditions that amount to punishment." *King v. Cnty. of*

4 *Los Angeles*, 885 F.3d 548, 556-57 (9th Cir. 2018) (internal quotation marks omitted) (quoting

5 *Jones*, 393 F.3d at 932).  The SVPA allows involuntary commitment of an individual convicted

6 of certain enumerated sex offenses and diagnosed with a mental disorder that makes the

7 individual a "likely" recidivist.  *See* Cal. Welf. & Inst. Code §§ 6600(a)(1), 6601(a)(1); *see*

8 *generally Jones*, 393 F.3d at 923.  California law requires that those civil detainees "be treated,

9 not as criminals, but as sick persons."  Cal. Welf. & Inst. Code § 6250; *accord Hubbart v.*

10 *Superior Court*, 19 Cal. 4th 1138, 1171 (1999).  As such, individuals civilly detained under the

11 SVPA are not held as punishment, and "they are entitled to more considerate treatment and

12 conditions of confinement than criminals whose conditions of confinement are designed to

13 punish."  *Jones*, 393 F.3d at 931 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982));

14 *accord King*, 885 F.3d at 556-57.

15      In *Jones*, the Ninth Circuit created two presumptions that apply to claims brought by

16 SVPA civil detainees.  *See Jones*, 393 F.3d at 934-35; *see also King*, 885 F.3d at 557.  First,

17 conditions of confinement are presumed punitive if the conditions are "identical to, similar to, or

18 more restrictive than, those in which [a civil pre-trial detainee's] criminal counterparts are held."

19 *King*, 885 F.3d at 557 (quoting *Jones*, 393 F.3d at 934-35).  Second, conditions of confinement

20 are presumed punitive if "an individual awaiting SVPA adjudication is detained under conditions

21 more restrictive than those the individual would face following SVPA commitment."  *Id.* (quoting

22 *Jones*, 393 F.3d at 933).

23      If either presumption applies, the burden shifts to the defendant to show that "legitimate,

24 non-punitive interests" justify the conditions of the detainee's confinement and "that the

25 restrictions imposed . . . [are] not 'excessive' in relation to these interests."  *Jones*, 393 F.3d at

26 935.  These interests could include maintaining security, effective management of the facility, and

27 ensuring detainees' presence at trial.  *King*, 885 F.3d at 558.  But "generalized jail management

28

1  concerns" are insufficient to rebut the presumption. *Kitchens v. Pierce*, 584 F. App'x 302, 304
2  (9th Cir. 2014).

### 1.     Bodnar and Forster's Challenge to Treatment

Defendants' motion to dismiss plaintiffs' claim that they are being denied adequate treatment in comparison to their already-adjudicated SVP counterparts and their criminally convicted counterparts should be granted. As noted above, defendants argue that plaintiffs do not have a legal right to obtain sex offender treatment because they are pre-trial civil detainees who have yet to be adjudicated as SVPs. *See* ECF No. 66-1 at 10-12. Defendants rely on *Batten v. Shasta County Board of Supervisors*, 489 F. App'x 174, 175 (9th Cir. 2012), to support their argument. In *Batten*, the Ninth Circuit affirmed the district court's order granting summary judgment in favor of defendants because plaintiff, a pre-trial detainee awaiting civil commitment proceedings under the SVPA, had no right to sex offender treatment under California law. *Id.* (citing *People v. Ciancio*, 134 Cal. Rptr. 2d 531, 545-46 (Cal. Ct. App. 2003) (holding that the SVPA does not mandate sex offender treatment before the person has been adjudicated as an SVP).

For context, the *Batten* plaintiff had been confined within Coalinga as an SVP under the SVPA. *Batten v. Shasta Cnty. Jail*, No. CIV S-08-2511 LKK EFB, 2011 WL 3875706, at *1 (E.D. Cal. Sept. 11, 2011). Before he had been adjudicated as an SVP, he was held at the Shasta County Jail to await commitment proceedings. *Id.* He brought suit based on the conditions he was subjected to while at the Shasta County Jail, including the fact that he was not provided sex offender treatment that he believed he was owed under the SVPA. *Id.* at *1, 11. The district court concluded that, because plaintiff was not entitled to sex offender treatment under the SVPA since he had not yet been adjudicated as an SVP, plaintiff could not establish a violation of his substantive due process rights. *Id.* at *12. The Ninth Circuit affirmed on appeal. *Batten*, 489 F. App'x at 175.

Plaintiffs attempt to distinguish their case from *Batten*, relying on *Fletcher v. Clendenin*, No. 22-cv-00249-AWI-BAM, 2022 WL 2791480 (E.D. Cal. July 15, 2022). In *Fletcher*, the magistrate judge allowed a pro se civil detainee's complaint to move forward on his Fourteenth

7

1    Amendment due process claim following screening. *Id.* at *6. The screening order does not
2    address whether plaintiff had been adjudicated as an SVP or was awaiting such adjudication. *See*
3    *generally id.* Nevertheless, the judge recommended that plaintiff be allowed to bring his
4    Fourteenth Amendment challenge to Coalinga's failure to provide him adequate sex offender
5    treatment under *Jones*. *Id.* at *5. The district court adopted this recommendation, *see Fletcher v.*
6    *Clendenin*, No. 22-cv-00249-AWI-BAM, 2022 WL 4226209 (E.D. Cal. Sept. 12, 2022), but the
7    action was ultimately dismissed for failure to prosecute, *see Fletcher v. Clendenin*, No. 22-cv-
8    00249-AWI-BAM, 2024 WL 5247103 (E.D. Cal. Dec. 30, 2024).

9    Defendants' arguments are more persuasive. Although *Jones* does hold that civil
10   detainees are entitled to more considerate conditions of confinement and cannot be punished, *see*
11   *Jones*, 393 F.3d at 931-32, plaintiffs ignore the fact that they are not entitled to sex offender
12   treatment under state law because they have not been adjudicated as SVPs. *See Batten*, 489 F.
13   App'x at 175; *see also Ciancio*, 134 Cal. Rptr. 2d at 545-46. Plaintiffs' reliance on *Fletcher* is
14   misplaced, since *Fletcher* does not address whether that plaintiff was an already adjudicated SVP
15   and *Fletcher* was in a wholly different procedural posture.

16   In an unpublished case, the Court of Appeals has considered this issue and ruled that
17   alleged SVPs have no right to mandated sex offender treatment while awaiting commitment
18   proceedings. *See Batten*, 489 F. App'x at 175. To rule otherwise would run afoul of the statutory
19   language, which does not mandate that pre-adjudicated SVPs receive specific sex offender
20   treatment. *See Ciancio*, 134 Cal. Rptr. 2d at 545-46. Thus, Bondar and Forster's argument that
21   they are not being provided adequate sex offender treatment as they await SVP adjudication
22   violates their due process rights should be dismissed without leave to amend.

### 2. Plaintiffs' Challenges to Access Electronic Devices with Internet Access, Educational Programming, Free Phone Calls, and Other Provisions.

26   Defendants' motion to dismiss plaintiffs' claims related to access to electronic devices
27   with internet capabilities should be granted, but defendants' motion to dismiss plaintiffs' claims
28   related to educational programming, phone calls, and other provisions should be denied. First, as

8

to electronic devices with internet access, plaintiffs have demonstrated that they are being subjected to conditions that are "more restrictive than, those in which [a civil pre-trial detainee's] criminal counterparts are held." *See King*, 885 F.3d at 557 (quoting *Jones*, 393 F.3d at 934-35). According to plaintiffs, their criminal counterparts are allowed access to electronic devices with internet capabilities which is restricted on an individual basis. *See* ECF No. 64 at 16. They also allege that individuals previously detained under the SVPA who are now on community or conditional release have individualized conditions that allow them internet capable devices, and that criminal parolees are given the same individualized conditions, but plaintiffs are not afforded that same individualized treatment. *See id.* Accordingly, plaintiffs have demonstrated that their access to electronic devices with internet capabilities is presumptively punitive under *Jones*. *See King*, 885 F.3d at 557 (quoting *Jones*, 393 F.3d at 934-35).

However, defendants have rebutted this presumption by pointing to "legitimate, non-punitive interests" that justify the conditions, which are "not 'excessive' in relation to these interests," *see Jones*, 393 F.3d at 935, namely, regulations prohibiting plaintiffs from having access to these devices. The Department of State Hospitals ("DSH") is responsible for operating the facilities like Coalinga and providing treatment. Cal. Welf. & Inst. Code §§ 6600.05 (a), (b); *see also* Cal. Welf. & Inst. Code § 4100(b) (providing that DSH has jurisdiction over Coalinga). The DSH has authority to adopt and enforce rules and regulations that are necessary to carryout its duties, and all DSH institutions are governed by uniform rules and regulations. Cal. Welf. & Inst. Code §§ 4005.1, 4027, 4101.

Under Title 9 of the California Code of Regulations, DSH has adopted rights and related procedures for all individuals (excluding those committed under the Lanterman-Petris-Short Act) placed in or committed to state hospitals like Coalinga. *See* Cal. Code Regs. tit. 9, §§ 880-892. Under these regulations, individuals being held under the SVPA "shall not have access to the internet." *See id.* § 891. Another regulation, which applies to Coalinga, prohibits all DSH patients access to almost all electronic devices that can connect to the internet, including tablets. *See id.* § 4350(a)(1)(A). However, SVPA detainees may have access to "[t]ablets or other devices designed for confined individuals through authorized vendors of the [DHS] and [CDCR]

9

that do not contain personally accessible data storage." *Id.* § 4350(b)(3). Nevertheless, the regulations also allow individual hospitals to enforce "a more restrictive contraband list as appropriate to address the needs or safety of a patient population or the hospital," and also allow hospitals the discretion to permit items to be accessible to patients on a supervised basis. *Id.* § 4350(c), (d).

Defendants contend these regulations were put in place due to technological advances that make child sexual abuse materials easier to access, and that could permit users to find new or former child sexual abuse victims to victimize. ECF No. 66-1 at 13. They note that, in *Johanneck v. Ahlin*, No. 18-cv-00051-LJO-MJS, 2018 WL 1014454 (E.D. Cal. Feb. 21, 2018), the argument plaintiffs make in the current case has already been rejected based on the validity of these regulations.

Here, defendants have adequately rebutted the *Jones* presumptions by pointing to legitimate reasons why plaintiffs are denied access to electronic devices that have internet access, and why these restrictions are not excessive. *See Jones*, 393 F.3d at 935. Restricting sexual offenders' abilities to access the internet maintains security and leads to the effective management of the facility, which are legitimate non-punitive interests justifying the restriction. *See King*, 885 F.3d at 558. As such, plaintiffs' challenge to their access to electronic devices with internet capabilities should be dismissed without leave to amend.

Conversely, defendants' motion to dismiss plaintiff's Fourteenth Amendment claims based on a lack of access to free phone calls, educational programming, personal clothing items, and the ability to shop for food items should be denied. Defendants' arguments on these points are simply that plaintiffs do not have a constitutional right to these items, meaning they have no protected liberty interest in them. *See* ECF No. 14-15. However, defendants do not address how or why plaintiffs—who are civil detainees and afforded more rights and privileges than their criminal counterparts—are not able to have access to these amenities. As plaintiffs' complaint currently stands, they sufficiently allege that they are being subjected to presumptively punitive conditions of confinement because their conditions are "more restrictive than, those in which [a civil pre-trial detainee's] criminal counterparts are held." *See King*, 885 F.3d at 557 (quoting

1  *Jones*, 393 F.3d at 934-35).  Defendants make no arguments point to "legitimate, non-punitive
2  interests" that would justify the conditions of plaintiffs' confinement and "that the restrictions
3  imposed . . . [are] not 'excessive' in relation to these interests." *Jones*, 393 F.3d at 935.  Thus,
4  because defendants have not rebutted the *Jones* presumption on these issues, their motion to
5  dismiss these claims should be denied.

### C. Bodnar's First Amendment Claim

Defendants' motion to dismiss Bodnar's First Amendment claim should be granted, but Bodnar should be allowed leave to amend.  Defendants merely argue that Bodnar failed to allege the amount of access to religious services that inmates had during the pandemic and how it was more than what he had as an SVP.  *See* ECF No. 15-16.  Bodnar acknowledges his First Amendment claim inadvertently left out sufficient facts and contends that he can allege sufficient information to withstand a motion to dismiss should he be given leave to amend.  *See* ECF No. 72 at 26.  Defendants' contentions are correct, but leave to amend should be granted on this claim because Bodnar could sufficiently bring such claim if given another opportunity to supply sufficient allegations.  Thus, plaintiff's First Amendment claim should be dismissed with leave to amend.

### D. Qualified Immunity

"Determining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). When qualified immunity is asserted in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless the court can determine, *based on the complaint itself*, that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (emphasis added) (internal quotations and citations omitted).  If the operative complaint has even one allegation of a harmful act that would qualify as a violation of a clearly established constitutional right, a plaintiff has the right to move forward with his claims. *Keates*, 883 F.3d at 1235.  There are two prongs in the qualified-immunity inquiry: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the case.'" *Tarabochia v. Adkins*, 766 F.3d

1115, 1121 (9th Cir. 2014) (internal quotation omitted). The court must view the facts "in the light most favorable to the injured party." *Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013) (citation omitted).

Here, as to plaintiffs' Fourteenth Amendment claim based on a lack of access to sex offender treatment, no constitutional violation has occurred, meaning qualified immunity does not apply. *See Tarabochia*, 766 F.3d at 1121. As to plaintiffs' Fourteenth Amendment claim based on a lack of educational programming, phone calls, and other provisions, the complaint sufficiently alleges at least one allegation of a harmful act that would qualify as a violation of a clearly established constitutional right, i.e., being a civil detainee subject to more favorable conditions of confinement than their criminal counterparts. As such, defendants' request for qualified immunity on this issue should be denied. As to plaintiff Bodnar's First Amendment claim, because the claim is being dismissed with leave to amend, it is premature to conduct a qualified immunity analysis.

### E.     Eleventh Amendment

The Eleventh Amendment bars claims for damages against state officers sued in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988). However, the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), provides for a narrow exception for prospective injunctive or declaratory relief against state officers in their official capacities for alleged violations of federal law. *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012); *see also Weinapple v. Bonta*, No. 24-cv-1769-DAD-JDP, 2024 WL 5118224, at *2 (E.D. Cal. Dec. 16, 2024) (applying the *Ex Parte Young* doctrine to a claim for declaratory relief).

Under *Ex Parte Young*, "the state official sued 'must have some connection with the enforcement of the act' to avoid making that official a mere representative of the state." *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999) (per curiam) (quoting *Ex Parte Young*, 209 U.S. at 157). This connection "must be fairly direct; a generalized duty to enforce state law or a general supervisory power over those persons responsible for enforcing the

1 challenged provision will not subject an official to suit." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d
2 697, 704 (9th Cir. 1992).  Additionally, the relief sought needs to be directly stated, as "[p]receise
3 resolution, not general admonition, is the function of declaratory relief."  *United States v.*
4 *Washington*, 759 F.2d 1353, 1357 (1985).

5   Defendants' motion to dismiss plaintiffs' official capacity claims for monetary damages
6 should be granted to the extent plaintiff seeks such relief because the Eleventh Amendment bars
7 such claims.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Flint v. Dennison*, 488 F.3d
8 816, 824-25 (9th Cir. 2007); *Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988).  Nevertheless,
9 plaintiffs' claims against defendants in their official capacities for injunctive relief may proceed,
10 as the relief requested is precise and direct.  *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704;
11 *Washington*, 759 F.2d 1353, 1357.

12   Accordingly, it is RECOMMENDED that:

13   1. Defendant's motion to dismiss, ECF No. 66, be GRANTED in part and DENIED
14 in part.

15   2. Plaintiffs' Eighth Amendment claims against defendants should be DISMISSED
16 without leave to amend.

17   3. Plaintiffs Bodnar and Forster's Fourteenth Amendment claim alleging violations
18 of due process due to a lack of sex offender treatment should be DISMISSED without leave to
19 amend.

20   4. Plaintiff's Fourteenth Amendment claim based on a lack of access to electronic
21 devices with access to the internet should be DISMISSED without leave to amend.

22   5. Defendants' motion to dismiss plaintiffs' Fourteenth Amendment claims alleging
23 violations of due process due to a lack or difference in conditions of confinement, including a
24 lack of access to educational programs, free phone calls, personal clothing, and nutritional
25 supplements, as compared to their criminal counterparts should be DENIED.

26   6. Plaintiff Bodnar's First Amendment freedom of religion claim against defendants
27 should be DISMISSED with leave to amend.

28

1  7. Plaintiff's claims against defendants in their official capacities for monetary
2  damages should be DISMISSED.

3  These findings and recommendations are submitted to the United States District Judge
4  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of
5  service of these findings and recommendations, any party may file written objections with the
6  court and serve a copy on all parties. Any such document should be captioned "Objections to
7  Magistrate Judge's Findings and Recommendations," and any response shall be served and filed
8  within fourteen days of service of the objections. The parties are advised that failure to file
9  objections within the specified time may waive the right to appeal the District Court's order. *See*
10 *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.
11 1991).

IT IS SO ORDERED.

Dated: December 3, 2025

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

14